IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JACK VICTOR MILLER                )
                                  )
v.                                )        No. 3:17-0791
                                  )
KENNETH HURST, et al.             )


**To:     The Honorable Aleta A. Trauger, District Judge**


## REPORT AND RECOMMENDATION

Currently pending are multiple motions: *pro se* Plaintiff Jack Miller's motion for temporary injunction (Docket Entry ("DE") 120);[1] Defendants Nita Miller Graves, Tedd Graves, and Lovingood Publishing Company's (the "Graves Defendants") motion to dismiss Plaintiff's second amended complaint, or alternatively for summary judgment (DE 123);[2] and Defendants Kenneth Hurst and Lillibeth Music's (the "Hurst Defendants") motion to join the Graves Defendants' motion to dismiss/motion for summary judgment. (DE 128.)

As an initial matter, the Court *sua sponte* LIFTS THE STAY of all proceedings previously imposed in this matter in order to affect immediate disposition of the parties' respective motions.

---

[1] Although Plaintiff's motion is captioned as a "motion for temporary injunction," no such relief is available in federal court. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 571-72 (6th Cir. 2002) (noting that the Federal Rules of Civil Procedure do not recognize the existence of a "temporary injunction"). Plaintiff's brief, however, seeks a "preliminary injunction" pursuant to Rule 65. (DE 120 at 1.) Plaintiff's filing will therefore be treated and identified as a motion for a preliminary injunction.

[2] The Graves Defendants filed two identical motions under two different headings on the docket: "motion to dismiss, motion to dismiss for failure to state a claim" (DE 123); and "motion for summary judgment." (DE 124.) To avoid confusion, and because the two entries both request dismissal or, alternatively, summary judgment, the Court will address only the first motion (DE 123) and recommends denying the second motion (DE 124) as moot without any further action.

For the reasons that follow, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 120) be DENIED, and that the Graves and Hurst Defendants' motions to dismiss (DE 123, 128) be GRANTED, specifically dismissal without prejudice as to the copyright infringement claim and with prejudice as to all other claims, as discussed below.[3]

# I. BACKGROUND

## A. Facts/State Court Background[4]

Plaintiff is a professional singer and songwriter who alleges that eight defendants—Nita Miller Graves (hereinafter "Graves"), Kenneth "Kenny" Hurst, Tedd Graves, Russell Sims, Sims Records, Lillibeth Music, Lovingood Publishing Company, and English Music—are responsible for various acts of copyright infringement and civil conspiracy pertaining to three songs that he has recorded: "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year."[5] Plaintiff

---

[3] The Graves Defendants' motion for leave to file a reply to Plaintiff's response to their motion to dismiss/motion for summary judgment (DE 130) is GRANTED. Generally, leave of court is not required to file a reply brief when a non-moving party asserts additional facts, as alleged by the Graves Defendants. (*Id.* at 1.) To the contrary, a reply brief is generally expected and must adhere to a specific format. *See* Local Rule 56.01(d). However, because the *pro se* Plaintiff's response does not directly address the Graves Defendants' statement of undisputed material facts, adherence to the requirements of Local Rule 56.01(d) will be excused.

[4] Unless otherwise noted, the factual background section is based on the allegations contained in Plaintiff's "Verified Second Amended Complaint." (DE 92.) Because Plaintiff's extensive procedural maneuverings have been discussed in previous orders (DE 47, 48, 91), this Report and Recommendation will largely limit its discussion to activity occurring since the filing of the "Verified Second Complaint" (hereinafter the "Complaint"), which is the legally operative complaint. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

[5] The first two songs have not been consistently identified in Plaintiff's pleadings. *See e.g.,* DE 1 at 1 ("Ain't Comin' Home"); DE 92 at 1 ("Ain't Coming Home"); *id.* at 8 ("Ain't Comin' Home This Time). *See also* DE 1 at 1 ("Burnin' Rubber (Over All My Burnin'

2

alleges that Graves, who is also his sister, presented copies of these recordings to Russell Sims and Tedd Graves as songs that she had written herself. Plaintiff claims that Defendants proceeded to record an album that included these songs and sell merchandise bearing the "Burning Rubber" title without his consent.[6]

Plaintiff additionally alleges that Graves filed applications for copyrights for the subject songs that contained a false claim that Graves had composed the lyrics to each of these songs. Based on such information, the U.S. Copyright Office assigned certificates of registration to Graves for "Ain't Coming Home" and "Cheater of the Year," and to both Graves and co-defendant Tedd Graves, her husband, for "Burning Rubber."

In an unrelated dispute over intellectual property, Plaintiff alleges that Graves has improperly claimed legal rights to the domain name "ProfessionalGambler.com" and the corresponding website, which involves a sports betting and handicapping business started by their father. Specifically, Plaintiff claims that following the death of their father, Graves commandeered control of ProfessionalGambler.com by representing herself as the primary account contact and transferring the account to a different domain name registrar. This led to a dispute in Rutherford County Probate Court (the "Probate Case"), with the Probate Judge ultimately concluding on July 2, 2019 that the *website* connected to ProfessionalGambler.com was acquired by Graves as an asset of their father's estate, but that Plaintiff "owned the domain

---

Bridges)"); DE 92 at 1 ("Burning Rubber"); *id.* at 15 ("Burnin' Rubber"). For clarity, the Court will, as denoted above, refer to the songs as "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year."

[6] Plaintiff does not specify which Defendants are responsible for each of these actions, although several pictures copied and pasted into the Complaint suggest that Kenny Hurst is the artist who recorded the songs at issue. (DE 92 at ¶ 28.)

3

name ... outside of the estate." (DE 114-1 at 2.) However, the Probate Judge denied Plaintiff's request to reopen the estate and "award [Plaintiff] the domain name" because the domain name was not part of the estate, thus rendering the Probate Court without authority to grant such relief. (*Id.*)

While the Probate Case was still pending, Graves sought various forms of relief related to the domain name and website in Rutherford County Chancery Court (the "Chancery Court Case"). On December 19, 2018, the presiding Chancellor issued declaratory and injunctive relief in favor of Graves after finding that Graves "is the owner of the website and domain name of professionalgambler.com." (DE 95-2 at 1.)[7] The Tennessee Court of Appeals has denied Plaintiff's multiple appeals of this decision and the Tennessee Supreme Court has denied his application for review. (DE 127-4 at 5; DE 127-5 at 1.)

**B. Procedural Background**

On September 19, 2019, the Court entered an order staying all proceedings in this matter pending the outcome of Plaintiff's most recent appeal to the Tennessee Court of Appeals. (DE 119.) The stay was implemented to avoid the risk of issuing a ruling inconsistent with the outcome of the state court proceedings, which also involved the dispute between Plaintiff and Graves as to ownership of ProfessionalGambler.com. The order required Defendants to advise this Court of the Tennessee Court of Appeals' decision within 14 days of receiving notice of said decision. (*Id.* at 2.) On October 28, 2019, the Graves Defendants filed a "notice of state case status" that notified this Court of the Tennessee Court of Appeals' denial of Plaintiff's most

_____

[7] On July 1, 2019, the Chancery Court entered an order requiring that the domain name and accompanying website be transferred to Graves. (DE 116-1 at 1-6.)

4

recent appeal on October 11, 2019. (DE 121.)[8] Following this denial, the Graves Defendants and Hurst Defendants (collectively referred to as "Defendants") filed the instant motions for dismissal or summary judgment. (DE 123, 128.)

On the same day that the Tennessee Court of Appeals dismissed Plaintiff's most recent appeal, Plaintiff filed the pending motion for a preliminary injunction. (DE 120.) Plaintiff alleges that he is "affiliated with the name ProfessionalGambler.com because he owns the trademark and conducted business there for four years," but states that he is "not affiliated with the website currently active at the domain name[.]" (*Id*. at 5.) Plaintiff therefore requests an order requiring Graves "to take the current property down or broadcast something that is not sports betting related and harmful to Plaintiff and consumers." (*Id*.)

Plaintiff's Complaint contains claims of copyright infringement, conspiracy to convert, and fraud related to the songs "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year." Plaintiff also alleges trademark infringement, unfair competition, violation of the Anticybersquatting Consumer Protection Act ("ACPA"), and violation of the Computer Fraud and Abuse Act ("CFAA") against Defendant Graves with respect to the ProfessionalGambler.com domain name. (DE 92 at ¶¶ 112-154.) Plaintiff seeks declaratory relief, injunctive relief, and damages stemming from these claims.

---

[8] The parties dispute whether the Graves Defendants' notice filing was timely. (DE 129 at 5; DE 130-1 at 1, n.1.) Regardless, the Court sees no indication that Plaintiff was prejudiced by the timing of this notice, which was filed, at most, three days after the deadline.

## II. ANALYSIS

### A. Dismissal for Failure to State a Claim

Because Defendants' motion to dismiss is dispositive of all claims in this matter, the Court will address it initially. Defendants move for dismissal of the seven claims contained in Plaintiff's Complaint: (1) copyright infringement; (2) "conspiracy to convert"; (3) fraud; (4) trademark infringement; (5) unfair competition; (6) violation of the ACPA; and (7) violation of CFAA. For the reasons below, the Court finds that the copyright infringement claim should be dismissed without prejudice, and that the remaining claims should be dismissed with prejudice.

In light of these findings, the Court additionally concludes that Plaintiff's motion for a preliminary injunction should be denied as moot.

### B. Standard of Review

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to "construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true[.]" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)).

Matters outside of the pleadings are generally not considered when ruling on a Rule 12(b)(6) motion to dismiss. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir.

2011) (citation omitted). However, the court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to dismiss into a motion for summary judgment. *Id.* at 680-81 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

Of note, pleadings submitted by *pro se* plaintiffs are generally "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "lenient treatment" accorded to *pro se* litigants is not without limits, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), and even a *pro se* plaintiff "must state and support all elements of a substantive claim to avoid an adverse judgment." *Durante v. Fairlane Town Ctr.,* 201 F. App'x 338, 344 (6th Cir. 2006).

### C. Plaintiff's Claims

### 1. Copyright Infringement

Defendants argue that Plaintiff's copyright infringement claims should be dismissed because the Complaint contains no allegation that any of the three songs at issue were registered at the time the instant action was commenced. (DE 126 at 8.) Plaintiff does not dispute that "Ain't Coming Home" and "Cheater of the Year" were not registered at the time the original complaint was filed, but responds that the timing of his copyright registration with respect to "Burning Rubber" is "not a binary issue[.]" (DE 129 at 5.) Plaintiff is mistaken and his claims should be dismissed, albeit without prejudice.

7

A plaintiff may pursue a copyright claim only after complying with the registration requirement contained in 28 U.S.C. § 411: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 28 U.S.C. § 411(a). The Supreme Court has noted that this requirement is "akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, ___ U.S. ___, 139 S. Ct. 881, 887, 203 L. Ed. 2d 147 (2019). Contrary to Plaintiff's assertion otherwise, the Supreme Court has held that this unambiguous requirement is satisfied "not when an application for registration is *filed*, but when the Register has *registered* a copyright after examining a properly filed application." *Id.*, 139 S. Ct. at 892 (emphasis added).[9]

The Complaint concedes that Plaintiff's attempts to register "Ain't Coming Home" and "Cheater of the Year" were unsuccessful (DE 92 at ¶ 18), which renders any claims stemming from these songs subject to dismissal. *See Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) ("A complaint which fails to plead compliance with § 411(a) is defective and subject to dismissal.") (internal citation omitted). The Complaint additionally alleges that Plaintiff registered "Burning Rubber" on April 23, 2017 and cites to "Exhibit B" (DE 92 at ¶ 17), although no such exhibit is attached to the Complaint. Defendants highlight a correspondence from the U.S. Copyright Office to note that registration for "Burning Rubber" was actually not completed until December 14, 2017 (DE 126 at 3), several months

---

[9] There are exceptions to the registration requirement, such as for works that are likely to be infringed prepublication and live broadcasts. *See* 17 U.S.C. §§ 408(f), 411(a), (c). However, no such exceptions apply to Plaintiff's claims.

after Plaintiff commenced this action. Because Plaintiff does not dispute the date of this registration—his reply brief concedes that registration for this song was in fact "delayed" (DE 129 at 5)—the Court finds that the claims relating to "Burning Rubber" were brought before registration was completed and should therefore be dismissed.[10]

Even assuming, *arguendo*, that Plaintiff has adequately pled that "Burning Rubber" was registered prior to commencement of this action, dismissal would be appropriate based on Plaintiff's failure to register "Ain't Coming Home" and "Cheater of the Year." This Court has recently examined the impact of the Supreme Court's decision in *Fourth Estate* in a nearly identical scenario involving a claimant who failed to register two of the three songs at issue prior to bringing her copyright infringement claims:

> The body of law that has emerged in the wake of *Fourth Estate* strongly suggests that allowing the claims related to *Seasons 4 U* to proceed, despite successful registration of the associated copyright following commencement of this action, would "undermine the objectives animating" the *Fourth Estate* holding. [*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019)]. Although there is some appeal to dismissing only the *Seasons 4 U* claims and allowing the remaining infringement claims to proceed, the Court does not find a tenable outcome in dismissal of the *Seasons 4 U* claims without prejudice and not of the claims for the other two works. *See id.* ("The fact that [plaintiff] properly 'commenced' this lawsuit as to *some* of its copyrights does not

---

[10] Defendants deduce that Plaintiff neglected to re-attach the exhibits from his original complaint to the current Complaint, and that the "Exhibit B" citation therein references an exhibit attached to the "second amended complaint" that Plaintiff improperly filed without seeking leave from the Court. (DE 56.) Because this "second amended complaint" was stricken from the docket, there is no record of the registration of "Burning Rubber" available to the Court. This omission would normally prevent the Court from assessing Defendants' motion to dismiss without converting it into one for summary judgment. *See Rondigo, supra.* However, because Plaintiff appears to accept Defendants' recitation of the contents of this exhibit, the Court will construe Defendants' characterization as an "exhibit[] attached [to the complaint]," thus making it appropriate for consideration under Rule 12(b)(6). *Rondigo*, 641 F.3d at 680.

9

excuse its failure to comply with § 411(a) as to its other copyrights.") (emphasis in original).

*Rawls v. Paradise Artists, Inc.*, No. 3:18-cv-0417, 2020 WL 1493610, at *6 (M.D. Tenn. Mar. 27, 2020). The same reasoning dictates that each of Plaintiff's claims for copyright infringement should be dismissed in the instant matter.

The salient question, which is not addressed in Defendants' brief, is whether Plaintiff's copyright claims are subject to dismissal with prejudice. The majority of cases decided after *Fourth Estate* have held that failure to satisfy section 411(a)'s registration requirement warrants dismissal *without* prejudice. *See, e.g., Andrews Enterprises, Inc. v. Fish*, No. 2:19-CV-00484-BLW, 2020 WL 2497697, at *3 (D. Idaho May 13, 2020) (dismissing claim for copyright infringement of unregistered copyright without prejudice); *Ambrosetti v. Oregon Catholic Press*, No. 3:19-CV-00682-JD-MGG, 2020 WL 2219172, at *6 (N.D. Ind. May 7, 2020) (same); *Laake v. Dirty World LLC*, No. CV-19-5444-PHX-DMF, 2020 WL 1866124, at *2 (D. Ariz. Apr. 14, 2020) (same). Such disposition is consistent with the notion that a failure to register a copyright prior to filing a copyright infringement lawsuit is tantamount to a failure to exhaust administrative remedies, which means the party that improperly initiated the action should be afforded the opportunity to go back and fulfill any pre-suit requirements. *See Cortes-Ramos v. Martin-Morales*, 956 F.3d 36, 43 (1st Cir. 2020) ("Generally, when a plaintiff's claim is dismissed for failing to satisfy a pre-suit requirement, the dismissal should be 'without prejudice' when the plaintiff may able to satisfy the requirement in the future."). Here, Defendant concedes that Plaintiff has now registered at least "Burning Rubber," which satisfies section 411(a) and

10

would allow him to bring a future copyright infringement action related to that work. Dismissal of Plaintiff's copyright infringement claims without prejudice is therefore warranted.

## 2. Conspiracy to Convert

Defendants argue that Plaintiff's "conspiracy to convert" claim is preempted by the Copyright Act and therefore subject to dismissal. (DE 126 at 15.) Notably, the Complaint fails to describe the basis for this claim, which appears to represent little more than garnish for the copyright infringement claim, thus making it difficult to engage in meaningful analysis. If a general civil conspiracy claim, the required elements of that cause of action under Tennessee law include: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001) (citing *Menuskin v. Williams,* 145 F.3d 755, 770 (6th Cir. 1998)). However, a conspiracy claim "must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Plaintiff's Complaint is completely devoid of any such particularity and therefore fails to state a cause of action for civil conspiracy.

Additionally, turning to Defendants' argument, Section 301 of the Copyright Act contains language that broadly preempts related state law claims:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright … are governed exclusively by this title. Thereafter,

11

> no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Preemption of a state law claim occurs when two requirements are met: (1) the works at issue must come within the scope of the "subject matter of copyright" as set forth in Sections 102 and 103 of the Copyright Act; and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the scope of federal copyright protection. *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) (citing *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001)). These requirements are sometimes referred to, respectively, as the "subject matter" requirement and the "equivalency" requirement. *Id*.

The subject matter requirement "is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection." *Id*. It cannot reasonably be disputed that all of Plaintiff's "conspiracy to convert" claims relate to Defendants' alleged copying of the three songs at issue. The Complaint even recites the alleged facts forming the basis of the "conspiracy to convert" claim under the same heading as those giving rise to the copyright infringement claims without distinguishing them. (DE 92 at ¶¶ 112-132.) The absence of any statute or other authority on which the "conspiracy to convert" claim is based muddles this analysis, although Plaintiff's failure to differentiate the copyright infringement claims from the "conspiracy to convert" claim in any way further supports a finding that the subject matter requirement is met.

For the same reason, the Court finds that the equivalency requirement is satisfied. This prong of the analysis inquires "whether the state common law or statutory action at issue asserts rights that are the same as those protected under § 106 of the Copyright Act." *Wrench*, 256 F.3d

12

at 455.[11] Equivalency is found to exist "if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights" contained in section 106. *Id.* at 456. To make such a determination, the Sixth Circuit has implemented the "extra element" test, which holds that "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* Put another way: even if an extra element exists, preemption is avoided "only where the element changes the nature, rather than the scope, of the action." *Stromback*, 384 F.3d at 301 (internal citation omitted).

As discussed *supra*, there is no indication that the "conspiracy to convert" claim represents a cause of action independent of the copyright infringement claim. Plaintiff relies on the same allegations, which are delineated under the caption of "Claims for Copyright Infringement and Conspiracy to Convert" (DE 92 at 24), and offers nothing to suggest that the "conspiracy to convert" claim is anything other than an attempt to bolster the copyright infringement claim. The "conspiracy to convert" claim therefore alters neither the scope nor the nature of the action. Plaintiff also provides no meaningful response to Defendants' arguments, but instead inaccurately characterizes Defendants' position. (DE 129 at 4.) Accordingly, the Court concludes that federal copyright law preempts the "conspiracy to convert" claim and thus finds that this claim should be dismissed with prejudice. *See Briscoe v. Fine*, 444 F.3d 478, 501

---

[11] Pursuant to section 106, the owner of a copyright has the exclusive rights to, among other things, reproduce copies of the copyrighted work, distribute copies of the copyrighted work to the public by sale, perform the copyrighted work publicly, and perform any copyrighted sound recording via digital audio transmission. 17 U.S.C. § 106.

13

(6th Cir. 2006) (conversion claims preempted by federal statute should be dismissed with prejudice).

### 3. Fraud on the Copyright Office

Under the caption of "Fraud on the Copyright Office," the Complaint sets forth a series of confusing accusations against Defendants that include misrepresentation to the Copyright Office. (DE 92 at ¶¶ 58-80.) It is unclear whether this section of the Complaint is meant to convey a specific claim or simply recite facts, although Plaintiff includes the following allegation against Defendant Graves: "[H]er actions and the actions of the inducers are willful, intended to deceive, to defraud and to induce. Their efforts are collaborative, in sync and with full endorsement and participation from the others." (*Id*. at ¶ 80.)

To the extent that Plaintiff intends to assert a claim for "fraud on the copyright office," Defendants correctly note that no such claim exists. *See Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 642 (E.D. Mich. 2014) ("Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c).") (internal citation omitted). It is also true, however, that "some courts" have allowed claims for declaratory judgment that a copyright is invalid based on fraud perpetrated on the copyright office to proceed. *Id.* (collecting cases). Regardless, the Complaint does not demand such declaratory judgment, but instead a declaration that copyright infringement has occurred with respect to rights that Plaintiff purports to own. (DE 92 at 32.) Therefore, because such a claim, insofar as it can be considered a valid claim, seeks to protect rights that are also protected by the Copyright Act, it is subject to preemption and should be dismissed with prejudice. *See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 307 (2d Cir. 2004) (holding that a claim that "simply

14

seeks a declaration that [the defendant] has no rights in [the work at issue]" is preempted by the Copyright Act).

### 4. Trademark Infringement

The Complaint sets forth a claim for trademark infringement under the Lanham Act stemming from Defendant Graves' use of the ProfessionalGambler.com mark. (DE 92 at ¶¶ 133-140.) The Complaint seeks injunctive relief intended to stop unauthorized use of the mark by Graves, which Plaintiff alleges will "likely [] cause substantial injury to the public and to Plaintiff[.]" (*Id.* at ¶ 140.)

A trademark is defined as "any word, name, symbol, or device ... used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To survive a motion to dismiss a federal trademark claim brought under the Lanham Act, the plaintiff "must allege facts establishing that: (1) [he] owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)).

The Complaint alleges that Plaintiff "owns PROFESSIONALGAMBLER.COM as a trademark," and that Plaintiff "submitted application and payment to federally register his mark on July 25, 2017. (Exhibit 2)." (DE 92 at ¶¶ 83, 135.) Although Plaintiff fails to attach "Exhibit 2" to the Complaint, these allegations are sufficient to establish ownership at the pleading stage.[12]

---

[12] Defendants note, however, that Plaintiff's trademark application was actually denied registration on the Principal Register and accepted only for the Supplemental Register (DE 126

15

However, the Complaint articulates no allegation that Defendant Graves used the mark in commerce. The Complaint instead offers only speculation regarding her purportedly unauthorized use: "[T]hough Defendant Nita Miller Graves did not have enough time to access and alter the content of the website, if she had, it would have deceived and confused the public, who would have thought they were dealing with [Plaintiff]." (*Id.* at ¶ 111.) Even in response to Defendants' argument that this represents insufficient pleading, Plaintiff appears to concede that his claim relies on a hypothetical scenario: "Any attempt by Defendant Graves … to use ProfessionalGambler.com[] in a sports-betting sense would be confusing to the public and an infringement on my rights." (DE 129 at 2.) Because Plaintiff's Complaint does not set forth facts sufficient to establish an essential element of a Lanham Act claim, the trademark infringement claim puts the cart before the horse and should be dismissed. *See Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996) ("[D]efendants' use of a protected mark … is a *prerequisite* to the finding of a Lanham Act violation. Absent such a finding, the eight-factor test … is irrelevant.") (emphasis in original).

### 5. Unfair Competition

Plaintiff's unfair competition claim, which is also brought pursuant to the Lanham Act (DE 92 at 2), fails for the same reasons. Although a claim of unfair competition generally does not require that a defendant actually use the plaintiff's trademark, the claim in this case relies exclusively on allegations pertaining to Graves' "unauthorized use" of the mark in question.

---

at 19), which "confers considerably fewer advantages than principal registration" and offers "no substantive trademark rights beyond those under common law." *In re Am. Fertility Soc.*, 188 F.3d 1341, 1343 (Fed. Cir. 1999) (internal citation omitted). In fact, registration on the Supplemental Register "is not evidence of ownership, validity, or the exclusive right to use[.]" *In re Bush Bros. & Co.*, 884 F.2d 569, 571 n.2 (Fed. Cir. 1989).

16

(DE 92 at ¶¶ 142-143.) Thus, Plaintiff's unfair competition claim, like his trademark infringement claim, fails unless he can establish that Graves used the mark in a prohibited manner. *See Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) (holding that because plaintiff's unfair competition allegations relate to defendants' alleged use of plaintiff's trademark, failure to show that defendants unlawfully used the trademark warrants dismissal). Because the Complaint contains no such allegation, the unfair competition claim should be dismissed.

The Court notes that the Complaint is laden with descriptions of alleged nefarious conduct by Defendant Graves that have nothing to do with trademark infringement or unfair competition related to ProfessionalGambler.com. Plaintiff instead alleges that Graves "hoodwink[ed]" a domain registrar as part of scheme to ultimately "seize the domain name and sell it" (DE 92 at ¶¶ 96, 101), but this allegation is controverted by state court orders showing unequivocally that Graves already owns the domain name and corresponding website. (DE 127-2; DE 127-3.)[13] Plaintiff's attempts to relitigate ownership of ProfessionalGambler.com in this Court via insufficiently pled claims of trademark infringement and unfair competition are improper, and therefore both claims should be dismissed with prejudice.

### 6. ACPA Claim

Plaintiff asserts a claim for ACPA violations in which he accuses Defendant Graves of cyberpiracy based on her alleged "hi-jack[ing]" of the ProfessionalGambler.com domain name.

---

[13] The Court finds that reference to these orders issued in the Chancery Court Case does not necessitate conversion of Defendants' motion to dismiss into one for summary judgment. *See Malin v. JPMorgan*, 860 F. Supp. 2d 574, 578 (E.D. Tenn. 2012) (holding that orders from bankruptcy court "are matters of public record and therefore the Court's taking of judicial notice of the bankruptcy filings do not convert this motion into one for summary judgment") (citing *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997)).

(DE 92 at ¶¶ 148, 150.) Plaintiff seeks injunctive relief to prevent Graves from "selling the domain name for a quick buck[.]" (*Id.* at ¶ 151, 152.)

The ACPA aims to prevent "cybersquatting" by individuals who register a domain name that includes a famous trademark, then attempt to sell the domain names to the trademark owners, which allows the cybersquatters to "profit[] from the goodwill associated with the trademark." *Bird*, 289 F.3d at 880. The ACPA therefore permits a trademark owner to bring a civil action against the purported cybersquatter if the individual (1) registers, traffics in, or uses a domain name (2) that is identical or confusingly similar to a distinctive or famous trademark, and (3) has a bad faith intent to profit from the trademark. 15 U.S.C. § 1125(d)(1)(A). The ACPA delineates nine factors that are relevant when considering the "bad faith" prong of the analysis. *Id.* § 1125(d)(1)(B)(i).

The Complaint in this matter fails to adequately plead an ACPA violation in multiple ways. With respect to the first element, Defendants correctly note the absence of any allegation that Graves registered or "trafficked in" the ProfessionalGambler.com domain name. The Complaint instead states that Plaintiff filed for registration of the ProfessionalGambler.com trademark on July 25, 2017, then alleges that Graves attempted to move the domain name bearing the same name to a different registrar. (DE 92 at ¶¶ 83, 96.) There is no allegation that Graves registered a different, but comparable domain name that might have been confused with the ProfessionalGambler.com trademark. *Cf. Chanel, Inc. v. Song Xu*, No. 09-2610, 2011 WL 13269431, at *7 (W.D. Tenn. Mar. 15, 2011) (finding that subject defendants' registration of domain names "letschanel.com," "2cchanel.com," and "chanelshow.com" were "confusingly similar" to several Chanel trademarks and thus satisfied the first and second elements). Because

18

the Complaint contains no allegation that Graves registered a domain name, the ACPA claim fails.

Additionally, the Complaint does not set forth an allegation that Graves possessed a bad faith attempt to "profit from the trademark" at issue. Plaintiff alleges that Graves exhibited a "bad faith intent of causing harm to Plaintiff and profiting unlawfully" by selling the ProfessionalGambler.com domain name (DE 92 at ¶¶ 149, 151), but this again ignores the fact that Graves is the rightful owner of both the domain name and corresponding website. Because Graves cannot misappropriate a domain name that she owns, Plaintiff's ACPA claim fails and should be dismissed with prejudice.

### 7. CFAA Claim

Finally, Plaintiff alleges a violation of the CFAA, which, although primarily a criminal statute, contains a civil provision that imputes civil liability to an individual who commits one or more of seven different criminal infractions involving unauthorized access to a computer. *See* 18 U.S.C. § 1030(a)(1)-(7). Plaintiff in this case alleges that Defendant Graves violated section "1030(g)(4)" of the statute (DE 92 at ¶ 153), although no such provision exists. However, Plaintiff employs language similar to that set forth elsewhere in the statute, which pertains to an individual who:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

18 U.S.C. § 1030(a)(4).

19

Even liberally construing the Complaint, the Court finds that Plaintiff has failed to state a claim under the CFAA. In fact, the Complaint contains no specific allegations regarding any CFAA violation, but rather what appears to be a placeholder phrase that was never finalized before filing: "Additional language about defendant Nita Graves' violation of the Computer Fraud and Abuse Act." (DE 92 at ¶ 154.) Because there are no allegations pertaining to a "protected computer," let alone unauthorized access of such a computer, Defendants' motion to dismiss this count should be granted.

As noted above, the Court's conclusion that each of the claims in the Complaint is subject to dismissal renders Plaintiff's request for a preliminary injunction moot. The Court therefore declines to consider the merits of that motion.

## III. RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that:

(1) Defendants' motions to dismiss (DE 123, 128) be GRANTED. Specifically, that Plaintiff's claim for copyright infringement be DISMISSED WITHOUT PREJUDICE and that the remaining claims set forth in the Complaint be DISMISSED WITH PREJUDICE.

(2)      Defendants' motion for summary judgment (DE 124) be DENIED AS MOOT without any further action, as it merely duplicates Defendants' motion to dismiss.

(3)      Plaintiff's motion for a preliminary injunction (DE 120) be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is

20

made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any response to the objections must be filed within fourteen (14) days after service of objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge