## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

JACK VICTOR MILLER,          )
                                     )
      Plaintiff,             )
                                     )
v.                                )      **Case No. 3:17-cv-00791**
                                   )      **Judge Aleta A. Trauger**
KENNETH HURST et al.,         )
                                   )
      Defendants.         )

## MEMORANDUM

The magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 132) on July 9, 2020, recommending that *pro se* plaintiff Jack Miller's Motion for Temporary Injunction (Doc. No. 120) be denied; that the motion filed by Nita Miller Graves, Tedd Graves, and Lovingood Publishing Company (the "Graves defendants") to dismiss the Second Amended Complaint or, alternatively, for summary judgment (Doc. No. 123) be granted; that the motion to join the Graves defendants' motion (Doc. No. 128), filed by defendants Kenneth Hurst and Lillibeth Music (the "Hurst defendants"), be granted; and that this case be dismissed in its entirety, with the plaintiffs' copyright claims being dismissed without prejudice and all other claims being dismissed with prejudice.

Now before the court are Miller's Objections to the R&R. (Doc. No. 137.) For the reasons set forth herein, the court will overrule the Objections and dismiss this case in its entirety.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Jack Miller filed suit against the Hurst defendants, the Graves defendants, Russell Sims,

Sims Records, and English Music on May 3, 2017, asserting claims for copyright infringement. The matter was referred to the magistrate judge for case management and a recommended disposition of the case under 28 U.S.C. §§ 636(b)(1)(A) and (B). (Doc. No. 6.)

The parties engaged in contentious motion practice and "extensive procedural maneuverings" (*see* Doc. No. 132, at 2 n.4) over the course of the succeeding two years. As of the summer of 2019, the operative complaint was the plaintiff's Verified Second Amended Complaint ("SAC"), asserting claims of copyright infringement, fraud on the U.S. Copyright Office ("Copyright Office"), and copyright conspiracy, as well as claims of trademark infringement, unfair competition, and cybersquatting in violation of the Lanham Act and the Anticybersquatting Consumer Protection Act ("ACPA"), and a claim for violation of the Computer Fraud and Abuse Act ("CFAA"). (Doc. No. 92.) In August 2019, the magistrate judge entered an Order granting a joint motion filed by the Hurst and Graves defendants for abstention and a stay pending resolution of parallel litigation in the Tennessee state courts potentially affecting Miller's trademark and other claims. At the same time, the magistrate judge denied without prejudice all then-pending motions in light of the stay, terminating no fewer than six motions. (Doc. No. 117.) In September 2019, the defendants notified the magistrate judge that the Tennessee Supreme Court had denied the plaintiff's application for permission to appeal a ruling from the Tennessee Court of Appeals but that the plaintiff had filed a new notice of appeal regarding the same ruling by the Rutherford County Chancery Court that had prompted the initial stay of this matter. (*See* Doc. No. 118.) The defendants requested that the stay remain in effect pending final resolution by the Tennessee Court of Appeals of the latest appeal, which again concerned matters related to the plaintiff's trademark and other claims. The magistrate judge granted that motion and extended the stay, instructing the parties to advise the court of any

decision by the Tennessee Court of Appeals within fourteen days of issuance of such opinion. (Doc. No. 119.)

Shortly thereafter, the defendants notified the court that the Tennessee Court of Appeals had dismissed the latest appeal filed in that court. (Doc. No. 121.)[1] In light of that resolution, the parties proceeded to refile the previously terminated dispositive motions. Miller filed his Motion for Temporary Injunction (Doc. No. 120), which the magistrate judge construed as a motion for a preliminary injunction. (*See* Doc. No. 132, at 1 n.1 (citing *Overstreet v. Lexington-Lafayette Urban Cty. Gov't*, 305 F.3d 556, 571–72 (6th Cir. 2002), as holding that the Federal Rules of Civil Procedure do not recognize the existence of a "temporary injunction").) The Graves defendants filed a Response in Opposition to that motion. (Doc. No. 122.)

At the same time, the Graves defendants filed their "Motion to Dismiss Plaintiff's Verified Second Amended Complaint or, in the Alternative, for Summary Judgment" (referred to hereafter as the "Joint Motion"), which they represent to be a motion filed on behalf of both the Graves and Hurst defendants. (Doc. No. 123, at 1.)[2] It is accompanied by a Statement of Undisputed Facts (Doc. No. 125), a Memorandum of Law (Doc. No. 126), and the Declaration of counsel (Doc. No. 127), to which are appended several exhibits. The Hurst defendants thereafter

---

[1] Although the defendants' notice stated that a copy of the Tennessee Court of Appeals' decision was submitted with the notice, the decision is not attached to the notice. However, it is attached to the Declaration accompanying the Graves defendants' Motion to Dismiss. (Doc. No. 127-4, at 5.)

[2] The Graves defendants' motion references only the Graves defendants in its title, but the body of the motion states that it is brought jointly by the Graves defendants and the Hurst defendants. (Doc. No. 123, at 1.)

In addition, although the Graves defendants' motion and alternative motion were incorporated into a single document, it was docketed twice, once as a motion to dismiss and a second time as a motion for summary judgment. Because the motions are identical and request the same relief, the court will refer only to the first (Doc. No. 123) and, as recommended in the R&R, will deny the second (Doc. No. 124) as moot.

filed their "Motion to Join [the Graves Defendants'] Motion to Dismiss," expressly giving notice that they join the Joint Motion and incorporating by reference the documents filed by the Graves defendants and their arguments pertaining to the plaintiff's copyright-related claims. (Doc. No. 128.) The Hurst defendants also reiterate that the plaintiff's non-copyright-related claims do not legally or factually involve the Hurst defendants and should be dismissed as to them for failure to state a claim or based on the absence of a material factual dispute. Miller filed a "Verified Response" to the Joint Motion (Doc. No. 129), but he did not respond to the Statement of Undisputed Facts. With the magistrate judge's (belated) permission, the Graves defendants filed a Reply, along with a second Declaration of counsel and more exhibits. (Doc. Nos. 133, 133-1.)

In the SAC, Miller alleges that he is a professional singer and songwriter and that the eight defendants are responsible for various acts of copyright infringement, conspiracy to engage in copyright infringement, and fraud on the Copyright Office relating to three songs that Miller allegedly composed and recorded: "Ain't Coming Home," "Burning Rubber," and "Cheater of the Year."[3] In particular, the plaintiff alleges that defendant Nita Miller Graves, who is also Miller's sister, presented copies of these recordings to Russell Sims and Tedd Graves, claiming to have written them herself. Without distinguishing among the defendants, the plaintiff claims that the defendants collectively recorded and released an album that includes his songs, without crediting him and without his consent, and that they sell merchandise featuring the title "Burning Rubber," also without his consent. He further alleges that Nita Graves filed copyright applications for the three songs, falsely identifying herself as the author of the lyrics of the songs. The Copyright Office issued certificates of registration to Graves for two of the songs and to both Graves and her husband, Tedd Graves, for the song "Burning Rubber." According to

---

[3] The court relates herein only those facts strictly necessary to understanding and resolving the plaintiff's Objections.

documentation incorporated by reference in the SAC, the plaintiff's copyright registration on "Burning Rubber" was actually issued on December 14, 2017. Copyright registrations for the other two songs were never issued, because the plaintiff filed a defective application that improperly included all three titles together on one application, and he failed to submit deposit copies of "Ain't Coming Home" and "Cheater of the Year." (*See* Doc. No. 126, at 3–4.)

The SAC also details the plaintiff's dispute with Nita Graves over intellectual property. In connection with this dispute, the plaintiff asserts claims for trademark infringement, unfair competition, and violation of the ACPA and the CFAA against Graves only, seeking declaratory and injunctive relief as well as damages. Miller alleges that Graves has improperly claimed legal rights to the domain name "professionalgambler.com" and the website corresponding to that domain name, which relates (or related) to a sports betting and handicapping business started by their father. Miller's dispute with his sister over the ownership of the website and domain name are at the heart of state court litigation involving the same parties. In November 2016, Graves sued Miller in the Rutherford County Chancery Court ("Chancery Court case"), seeking a declaration as to who owned the website and domain name. (*See* Doc. No. 97, at 4.) While the Chancery Court case was still pending, on July 25, 2017, Miller "submitted application and payment to federally register" PROFESSIONALGAMBLER.COM as a trademark. (Doc. No. 92 ¶ 83.) Because the plaintiff's claims in this case also involve the domain name and website, the magistrate judge issued the abstention order and stayed this case pending resolution of the Chancery Court case. After a trial in September and October 2018, the presiding Chancellor in the Chancery Court case granted relief in favor of Graves, ruling on December 19, 2018 that she was the owner of both the domain name "professionalgambler.com" and the website associated with that domain. (*See* Doc. No. 95-2, at 1.) The Tennessee Court of Appeals dismissed Miller's

appeal of that decision for failure to comply with Rule 24 of the Tennessee Rules of Appellate Procedure.[4] (Doc. No. 127-4, at 5.)

In the R&R, the magistrate judge concludes that all of Miller's claims are subject to dismissal under Rule 12(b)(6) and, therefore, treats the motion as a motion to dismiss rather than as a motion for summary judgment. The magistrate judge finds that the plaintiff has conceded that his attempts to register "Ain't Coming Home" and "Cheater of the Year" were unsuccessful and that registration of "Burning Rubber" was not actually completed until December 2017, approximately seven months after the filing of the original Complaint initiating this suit. On that basis, the magistrate judge recommends that the plaintiff's copyright infringement claims be dismissed without prejudice. (Doc. No. 132, at 8–9.) The R&R also finds that the claims for copyright conspiracy and fraud on the Copyright Office are preempted by the Copyright Act and subject to dismissal with prejudice. (*Id.* at 13–15.) The plaintiff does not object to these findings and conclusions. The court will, therefore, accept and adopt them in their entirety, without further discussion.

The R&R recommends that the trademark infringement and unfair competition claims be dismissed with prejudice, on the basis that the SAC fails to allege facts suggesting that Graves actually used the allegedly registered mark in commerce or in a prohibited manner. (*Id.* at 16–17.) The magistrate judge finds that the SAC does not contain factual allegations to support several of the necessary elements of an ACPA claim—in particular, that the plaintiff does not allege that Graves registered or "trafficked in" the domain name or that she "possessed a bad faith [intent] to 'profit from the trademark' at issue." (*Id.* at 18–19.) The R&R recommends dismissal of the CFAA claim on the basis that the SAC contains no factual allegations pertaining

---

[4] The referenced rule pertains to the content and preparation of the record on appeal. Tenn. R. App. P. 24.

to unauthorized access of a protected computer or, indeed, any computer. Finally, because the magistrate judge concludes that all of the plaintiff's claims are subject to dismissal, either with or without prejudice, she recommends that the plaintiff's construed motion for a preliminary injunction be denied as moot. In a separately issued order, the magistrate judge notes that dismissal of the SAC in its entirety would entail dismissal of the claims against Russell Sims, Sims Records, and English Music as well, even though these defendants did not respond to the plaintiff's pending motion or join in the other defendants' Joint Motion.[5]

The plaintiff filed timely Objections to the R&R, pertaining almost exclusively to the recommended dismissal of his Lanham Act claims. (Doc. No. 137.) The Graves defendants filed a Response to the Objections (Doc. No. 138), specifically addressing a few of the plaintiffs' individual objections, and the plaintiff filed a Reply (Doc. No. 139).

## II.  STANDARD OF REVIEW

Within fourteen days after being served with a report and recommendation, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). In conducting its review, the district court "may accept, reject, or

---

[5] Early in the proceedings, the wife of defendant Russell Sims, Holly Holstead, attempted to respond to the Complaint on behalf of her husband and his business concerns, representing to the court that her husband is ninety years old, afflicted with Alzheimer's disease, and currently a full-time resident at a long-term care facility in Smithville, Tennessee. (*See* Doc. Nos. 17-1, 83.) The magistrate judge, by Order entered in September 2017, notified Holstead that she did not have standing to represent either her husband or her businesses and that she would need to procure an attorney to do so. (Doc. No. 24.) Holstead later requested that an attorney be appointed to represent her husband, documenting the difficulties she had had in procuring free legal assistance and a lack of the funds necessary to hire an attorney. In an Order entered contemporaneously with the R&R (Doc. No. 131), the magistrate judge expressly declined to take any action on the letter but noted that the request for appointment of counsel would be rendered moot if the court adopts the recommendation that the case as a whole be dismissed.

modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. Moreover, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App' x 354, 356 (6th Cir. 2001) (*see also Langley v. DaimlerChrysler Corp*., 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co*., 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec' y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Becker v. Clermont Cty. Prosecutor*, 450 F. App' x 438, 439 (6th Cir. 2011); *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

## III.    THE PLAINTIFF'S OBJECTIONS

The plaintiff objects to the dismissal of his Lanham Act claims and to the dismissal of the copyright claim that pertains to Graves' alleged used of the domain name professionalgambler.com and associated website. The defendants responded broadly to the Objections as a whole, arguing that they merely "rehash" arguments the plaintiff has already raised "many times previously" and, therefore, are not proper objections. (Doc. No. 138, at 1.)

Otherwise, the defendants address only a few of the plaintiff's specific arguments. Because the defendants had no obligation to respond to the plaintiffs' Objections, *see* Fed. R. Civ. P. 72(b)(2) ("A party *may* respond to another party's objections[.]" (emphasis added)), the absence of a response to any particular objection cannot be deemed to concede the correctness of the plaintiff's objection. The plaintiff's Reply (Doc. No. 139) contends generally that the defendants' Response to his Objections is late and should not be accepted. He also denies rehashing any old arguments. Because the plaintiff was not prejudiced by the delay[6] and because the arguments therein do not make a substantive difference to the court's analysis, the court will consider the defendants' Response.

## A.      Consideration of Evidentiary Material Submitted by Defendants

The plaintiff argues first that the motion to dismiss should have been converted into a motion for summary judgment under Rule 56, failing which, the magistrate judge erred in taking into consideration a "private email exchange" between the plaintiff and counsel for the defendants concerning the state court proceedings, which was not attached to the pleadings. (*See* Doc. No. 137, at 1 (referencing Doc. No. 137-1, at 2–5; filed by defendants at Doc. No. 127-6).)

The defendants respond that nothing in the R&R suggests that the magistrate judge relied on the document referenced by the plaintiff to reach her ruling. The plaintiff replies that the "email exchange . . . is not discussed in the [R&R]." (Doc. No. 139, at 2.) He appears to take the position that, unless the magistrate judge expressly excluded the document from consideration, she must have considered it. (*See id.* ("The Court would have explicitly addressed this if the documents were excluded by the Court. . . . There is no reason to believe the Magistrate Judge did not consider the exhibits. The Court cannot un-hear or un-see evidence. This was clearly a

---

[6] The Response was due by Friday, August 7, 2020 but filed on Monday, August 10, 2020, so late by one business day.

prejudicial exhibit that cannot be allowed in a motion to dismiss under Rule 12(b)(6).").)

As an initial matter, the court notes that the magistrate judge in this instance had no obligation to treat the Joint Motion as a motion to dismiss as opposed to a motion for summary judgment. The defendants titled their motion as one for summary judgment, filed evidentiary material and a Statement of Undisputed Facts along with the motion, and clearly placed the plaintiff on notice by the title of the motion that it was intended to be considered as a motion for summary judgment *or* as a motion to dismiss. The plaintiff's Response indicates that he recognized it as such. (*See* Doc. No. 129 ("Plaintiff's Verified Response to [Graves Defendants' ] Motion to Dismiss Plaintiff's Verified Second Amended Complaint (Doc. No. 92) or, in the Alternative, for Summary Judgment").)[7] Under the circumstances, if the plaintiff believed that he would be prejudiced if the court treated the motion as one for summary judgment, then he had an affirmative obligation to "show by affidavit or declaration that, *for specified reasons*, [he could not] present essential facts to justify [his] position." Fed. R. Civ. P. 56(d). Failing that, the magistrate judge had the discretion to address the motion under the standards that apply to Rule 56 and to consider the evidentiary material submitted by the defendants. *See Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989) ("Appellant bore the burden, therefore, to demonstrate to the district court ' for reasons stated' why he could not oppose the summary judgment motion by affidavit and how postponement of a ruling on the motion would enable him to rebut Appellees' showing of the absence of a genuine issue of fact.").

Regardless, it is also clear that the magistrate judge considered the motion under the

---

[7] In his Response to the Joint Motion, the plaintiff also references his understanding that he was allowed twenty-one days under the Local Rules to respond, further indicating that he interpreted it as a motion for summary judgment. (*See* Doc. No. 129, at 1.) Local Rule 7.01(a)(3) grants twenty-one days for responding to a motion for summary judgment but only fourteen days for responding to a motion to dismiss.

standards applicable to motions under Rule 12(b)(6) and did not consider the document to which the plaintiff objects. The R&R expressly states that, "[b]ecause Defendants' motion to dismiss is dispositive of all claims in this matter, the Court will address it initially," meaning that the magistrate judge never considered the defendants' alternative request for summary judgment. (Doc. No. 132, at 6.) In addition, the R&R expressly outlines the relevant facts and states that the facts are based on the allegations in the SAC "[u]nless otherwise noted." (*Id.* at 2 n.4.) The R&R then includes one footnote referencing evidentiary material that was not filed with or incorporated by reference in the SAC, explaining why consideration of it did not mandate treating the motion as a summary judgment motion. (*Id.* at 17 n.13 (referencing Doc. Nos. 127-2, 127-3.) None of the cross-referenced material is the document the plaintiff contends should not have been considered. It would not necessarily have been improper for her to do so, but there is no evidence in the record that the magistrate judge considered the referenced document or relied on it in any way. Thus, this objection is without merit.

### B. Failure to Treat Domain Name Rights as Distinct from Trademark Rights

The plaintiff asserts that the magistrate judge erred in failing to acknowledge that domain name rights and trademark rights are separate and that domain name rights do not confer trademark rights. In other words, his argument is that Nita Graves' ownership of the domain name "professionalgambler.com" did not give her the right to use it if it infringed his trademark, PROFESSIONALGAMBLER.COM, and that her use of the domain name in fact constituted trademark infringement. The plaintiff raised essentially the same argument in his Response to the Joint Motion. (Doc. No. 129, at 1–2.) The plaintiff now argues that the magistrate judge incorrectly concluded that "Graves cannot misappropriate a domain name that she owns." (Doc. No. 137, at 7 (quoting Doc. No. 132, at 19).)

There is no merit to this objection because the magistrate judge clearly did distinguish between the mark, PROFESSIONALGAMBLER.COM, and the website domain name, professionalgambler.com. The R&R clearly accepted as true the plaintiff's allegation that he had registered PROFESSIONALGAMBLER.COM as a trademark and that the mark was valid and protectible. As discussed below, her determination as to whether infringement had occurred was not based *per se* on a determination that Graves owned the right to the domain name and the associated website, but on a conclusion that the SAC did not allege sufficient facts to state a colorable claim for trademark infringement.

### C.     Trademark Infringement – "Use in Commerce"

The plaintiff asserts that the magistrate judge erred in concluding that the SAC does not allege that Graves used the mark in commerce, because "[t]rying to sell an infringed trademark satisfies the 'use in commerce' requirement." (Doc. No. 137, at 8.) Likewise, he objects to her finding that his pleading "offers only speculation regarding [Graves'] purportedly unauthorized use." (Doc. No. 137, at 8.) The court finds no error and will overrule this objection.

"A trademark is 'any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting 15 U.S.C. § 1127). The elements of a claim for trademark infringement under the Lanham Act are: (1) the plaintiff owns a registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion. *Id.*; *see also* 15 U.S.C. § 1114(1).

The allegations in the SAC concerning the alleged "use in commerce" of the trademark are few. The plaintiff began operating a web-based business known as "ProfessionalGambler.com" in April 2015. (Doc. No. 92 ¶ 81.) He claims that he registered

"PROFESSIONALGAMBLER.COM" as a trademark on July 25, 2017 and that Graves "surreptitiously" "gained access to [his] registrar account at Network Solutions with the intention of stealing it by transferring it [presumably meaning the domain name and/or associated website, which had been registered in his name] to another registrar." (*Id.* ¶ 88.) He alleges other underhanded activity by Graves, all purportedly happening around the same time.[8] (*Id.* ¶¶ 89–100.) He then alleges that "Nita Miller Graves wants to seize the domain name and sell it." (*Id.* ¶ 101.)

As the plaintiff concedes, the Rutherford County Chancery Court issued a declaration on December 19, 2018 that Nita Graves "is the owner of the website and domain name of professionalgambler.com." (Doc. No. 127-2, at 1.) Even though this fact is not alleged in the SAC, the court clearly may take judicial notice of other court proceedings without converting a motion to dismiss into one for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). In addition, the court "must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Id.* at 816–17. It is undisputed here that the plaintiff's appeal of the Chancery Court's decision was dismissed and the Tennessee Supreme Court denied review, thus making the trial court's decision the final judgment in that case for purposes of issue preclusion. *See Jackson v. Smith*, 387 S.W.3d 486, 495 (Tenn. 2012) (recognizing a trial court order as a final judgment with preclusive effect when it was not appealed). In other words, it is clear that Nita Graves has no need to "seize" the domain name—she already owns it.

---

[8] The plaintiff also refers to an event occurring in May 2017 (Doc. No. 92 ¶ 98), but the documents he incorporates by reference in support of that contention, which were attached to his first Amended Complaint but not re-attached to the Verified Second Amended Complaint, show that the events all took place in May 2016. (*See* Doc. Nos. 29-9, 29-10, 29-11, 29-12 (referenced in Doc. No. 92 ¶¶ 88, 90–96, 99, 100.)

With regard to infringement itself, besides his claim that Graves wants to sell the domain name, Miller alleges:

> Even though Defendant Nita Miller Graves did not have enough time to access and alter the contents of the [plaintiff's] website [previously lodged at professionalgambler.com, before he moved it to professionalgambler.org], if she had, it would have deceived and confused the public, who would have thought they were dealing with J.V. Miller.

(Doc. No. 92 ¶ 11.) In the "Claims for Trademark Infringement" section of the SAC, the plaintiff asserts that he owns the mark PROFESSIONALGAMBLER.COM and that it is a valid, protectable trademark. In a wholly conclusory fashion, he states that "Defendant Nita Miller Graves' past unauthorized use of Plaintiff's trademark and ongoing attempts to violate Plaintiff's trademark, [are] likely to cause confusion, deception and mistake by creating the false and misleading impression that Plaintiff [sic] is affiliated with or connected to J.V. Miller Sports or professionalgambler.com." (*Id.* ¶ 137; *see id.* ¶ 138 (again claiming Graves "used PROFESSIONALGAMBLER.COM" without his consent and in a manner likely to cause confusion).) Finally, the plaintiff asserts that Graves' "unauthorized use" of his mark demonstrates willfulness and bad faith, based on the activities that allegedly took place in May 2016.

The plaintiff insists that the magistrate judge erred in concluding that the SAC "articulates no allegation that Defendant Graves used the mark in commerce." (Doc. No. 132, at 16.) He argues that "[t]rying to sell an infringed trademark satisfies the 'use in commerce' requirement" (Doc. No. 137, at 8 (citing *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227 (N.D. Ill. 1996))) and that he adequately alleges in the SAC that Graves intended to "seize the domain name and sell it" (*id.*). He also argues that he did not merely speculate as to this intention, because he presented "copies of letters" between Graves' attorney and GoDaddy from December

2018—after the state court issued the declaration that Graves owned the domain name and accompanying website—which the plaintiff characterizes as evidence that Graves and her attorney "hijacked his website" a second time. (*Id.*)

The plaintiff does not indicate where in the record the letters to which he refers may be found, and the court declines to comb the record to locate them. Regardless, the fact remains that, in the actual SAC, the plaintiff plainly does not allege that Graves ever used the domain name, or his mark, in commerce, a necessary element of his trademark infringement claim. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (listing the use of the mark in commerce as an element of a trademark infringement claim under the Lanham Act).

The plaintiff does allege that Graves is trying to sell the domain name. However, courts have consistently held that allegations of "actual trafficking" of a domain name are not sufficient to give rise to a trademark infringement claim where the defendant is not using the website "for the sale of any product or service." *See, e.g.*, *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 648 (E.D. Mich. 2001) (citing, among others, *Intermatic*, 947 F. Supp. at 1235). Thus, an allegation that Graves wants to sell the domain name, standing alone, is not sufficient to establish infringement. Because the SAC does not allege that Graves has ever used the website or domain name for the sale of products or services, it does not state a claim for trademark infringement.

To the extent the plaintiff is also objecting to the recommended dismissal of his unfair competition claim, the same analysis applies. *See Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) (comparing the language of 15 U.S.C. §§ 1114(1)(a) and 1125(a) and observing that "these statutes indicate [that] a claim of unfair competition, unlike a claim of trademark infringement, does not require that a defendant use the plaintiff's trademark" but holding that,

when the plaintiff's unfair competition claim also relates to the defendant's alleged "use" of his trademark, then such a claim will "fail unless the defendant[] actually used [the plaintiff's] trademark in a prohibited manner").

### D.    Registration of Mark on Supplemental Register

Miller also claims that the magistrate judge erred in relying in any way on the fact that the PROFESSIONALGAMBLER.COM mark was denied placement on the principal register and instead placed on the supplemental register, because, he asserts, "[i]t is clear my trademark should have been on the Principal Register the entire time." (Doc. No. 137, at 12 (referencing *U.S. Patent & Trademark Office v. Booking.com B.V.*, 140 S. Ct. 2298 (2020)).) However, the magistrate judge did not rely on the fact that the mark was placed on the supplemental register. Although she referenced the defendants' representation in that regard (Doc. No. 132, at 15 n.12), she did so in a footnote while expressly finding, for purposes of ruling on the Joint Motion, that the allegations in the SAC "are sufficient to establish [trademark] ownership at the pleading stage" (*id.* at 15). The magistrate judge also accepted as true the plaintiff's allegations that his mark is valid and protectible. This objection, too, is unfounded.

### E.    The ACPA Claim

Miller claims that the magistrate judge erred in finding that the SAC does not allege facts showing that Graves attempted in bad faith to profit from his trademark, for purposes of stating a claim under the ACPA. The court finds that the magistrate judge's treatment of the "bad faith" element of this claim was somewhat cursory, but the ACPA claim is nonetheless subject to dismissal.

Congress enacted the ACPA, 15 U.S.C. § 1125(d), in 1999 to address "a new form of piracy on the Internet caused by acts of 'cybersquatting,' which [typically] refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights

of trademark owners." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008) (quoting S. Rep. No. 106–140, at 4 (1999)). In relevant part, the statute provides for liability in a civil action by the holder of a protectible trademark against any "person" who:

> (i) has a bad faith intent to profit *from that mark* . . . ; and
>
> (ii) registers, traffics in, or uses a domain name that–
>
> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]
> >
> > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark[.]

15 U.S.C. § 1125(d)(1)(A) (emphasis added). Thus, to state a claim under the ACPA, a plaintiff must establish: "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004).

The statute also lists nine non-exclusive facts the courts "may" consider in determining whether the person acted with the requisite bad faith intent. Ultimately, each of these factors addresses whether "the defendant's use of the disputed domain name is legitimate—*i.e.*, for some purpose other than simply to profit from the *value of the trademark*." *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, 642 (E.D. Mich. 2001) (emphasis added). In any event, bad faith "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id.* § 1125(d)(1)(B)(ii).

In her motion, Graves argues that the plaintiff cannot establish the bad faith element, because he does not plead that she used the domain name or took any action in connection with it without authorization, since the Chancery Court had already declared her to be the owner of the domain name pursuant to a 2015 agreement between her and Miller.

The court agrees. Assuming that Miller owns a protectible trademark that is either distinctive or famous, which the Joint Motion does not contest, he must also establish that Graves registered, used, or trafficked the domain name with a bad faith intent to profit "from the value of the trademark." *Greatdomains.Com*, 177 F. Supp. 2d at 642. Graves is not alleged to have registered the domain name—it was already registered well before Miller attempted to register his trademark. Miller claims that Graves' acts of moving the domain name from one registrar to another should qualify as registering it, but he offers no support for that assertion, and the court is not persuaded. Moreover, he does not allege facts suggesting that Graves "used" the domain name with the intent to profit from his trademark. The plaintiff alleges only that Graves' desire to sell the domain name qualifies as "trafficking" in bad faith.

In considering whether the allegations in the SAC support that claim, it is important to take note of the timing of events. Although the Chancery Court decision was not issued until December 2018, Miller and Graves were litigating control of the domain name in state court throughout 2016 and 2017. During that entire time frame, the plaintiff was clearly on notice that, at the very least, there was a dispute as to who had rights to the domain name. Moreover, in July 2017, while actively litigating that question, the plaintiff sought to register PROFESSIONALGAMBLER.COM as a trademark. The timing of the registration strongly suggests that the plaintiff registered the trademark at that time to take advantage of the fact that ownership of the domain name was then still in legal limbo.

In addition, the allegations in the SAC concerning the allegedly "sneaky and brazen manner in which Defendant hi-jacked Plaintiff's domain name" (Doc. No. 92 ¶ 148) indicate that this purportedly "bad faith" conduct largely took place in May 2016, well before Miller claims he registered his mark. Those acts cannot give rise to a cybersquatting claim, simply because the plaintiff does not allege that he had a protectible trademark, registered or unregistered, at that time.

Finally, after several years of contentious litigation, Graves was awarded the ownership of the domain name, around the same time that the plaintiff was granted a trademark registration. Under these circumstances, the mere fact that Graves intends to sell the domain name, purportedly to the detriment of the plaintiff and his customers, does not support an inference that she has "a bad faith intent to profit from that mark," 15 U.S.C. § 1125(d)(1)(A)(i), as opposed to profiting, incidentally, from mere sale of the domain name. *Accord Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1058 (10th Cir. 2008) ("The quintessential example of a bad faith intent to profit is when a defendant purchases a domain name very similar to the [pre-existing] trademark and then offers to sell the name to the trademark owner at an extortionate price. A defendant could also intend to profit by diverting customers from the website of the trademark owner to the defendant's own website, where those consumers would purchase the defendant's products or services instead of the trademark owner's. Neither of these purposes is evident here."); *Greatdomains.Com*, 177 F. Supp. 2d at 642 ("[T]he ACPA was designed to target persons who commandeer a domain name for no reason other than to profit by extortion, yet bypass persons with legitimate interests in the domain name—even if they do incidentally profit from the domain name's status as a trademark.")

In sum, there is simply no indication from the plaintiff's allegations that Graves

"commandeered" the domain name for the purpose of extorting Miller or profiting from the value of his trademark. The facts of this case do not fall within the scope of ACPA. The court will reject Miller's objections and accept the R&R's recommendation that this claim be dismissed with prejudice.

### F.     Copyright Infringement Claims Associated with Graves' Use of Website

Miller argues that the R&R fails to address the plaintiff's copyright infringement claims that arise in connection with Graves' purported use of the "website once known as PROFESSIONALGAMBLER.COM®       and       now       known       as PROFESSIONALGAMBLER.ORG™." (Doc. No. 137, at 14.)

Although the defendants now argue that the plaintiff did not make any such claim in the SAC, their Joint Motion clearly construes the SAC as asserting a copyright claim in connection with the domain name and seeks dismissal of the claim. There, the defendants note that "Plaintiff also references the domain name 'professionalgambler.com' in his claims for copyright infringement and conspiracy to convert," and they argue that "[t]he inclusion of any domain name in these claims is not appropriate, because Plaintiff has not pled that he has sought to register a domain name with the U.S. Copyright Office, even if registration of a work of such type were possible . . . ." (Doc. No. 126, at 13.) In his Response to the Joint Motion, the plaintiff insists that he owns the copyright issued to his father for the *content* of what the plaintiff claims is *his* website, which Graves allegedly "hi-jacked." (Doc. No. 129, at 3.) In the text of his Response, he reproduces what he purports to be proof of the 2000 copyright registration on articles written by his father that were allegedly available on the website he claims was his but was "hi-jacked" by Graves and that were also published in the father's book to which the plaintiff, rather than Graves, received the rights after their father died. (*Id.*)

Regardless, the SAC itself does not allege any facts concerning copyright registration of

the domain name or website content, nor does it allege the unlawful copying of content to which the plaintiff owns the copyright. On the first page of the SAC, Miller asserts, without elaboration, that he brings a claim for copyright infringement against Graves based on the "domain name/URL PROFESSIONALGAMBLER.COM." (Doc. No. 92, at 1.) He does not reference copyright violation in connection with his trademark in the fact section of the SAC. In the section of the SAC that purports to state claims for copyright violation, Miller asserts that the "website is an original creation" (*id.* ¶ 115), but he does not otherwise refer to the website or domain name in connection with his copyright infringement claim. These vague and utterly conclusory assertions are not sufficient to give rise to a viable claim of copyright infringement in connection with the domain name or associated website. The magistrate judge therefore did not err in declining either to recognize or address such a claim.

In addition, although the R&R does not expressly address the copyright claims relating to the domain name or the website, it does conclude that *all* copyright claims are subject to dismissal because the plaintiff fails to adequately plead that he satisfied the requirements of 17 U.S.C. § 411(a). This conclusion is equally applicable to any copyright claims relating to the domain name or website content: the plaintiff has not alleged facts showing compliance with § 411. Even if the court accepts as a factual matter the plaintiff's assertion in his Response to the Joint Motion that his father owned a copyright and that he is a successor to his father's rights, he fails to allege concrete facts showing infringement of any rights conferred by the Copyright Act. Graves is entitled to judgment in her favor on this claim as well.

### G.     The Dismissal of the Plaintiff's Appeals

The plaintiff takes issue with the magistrate judge's reference to the dismissal of his appeals by the Tennessee Court of Appeals and the Tennessee Supreme Court's denial of his application for review. He seems to believe that the fact that the appellate courts did not consider

his appeals on the merits makes some difference to this case or to the validity of the Chancery Court's orders. It does not. As discussed above, regardless of whether the dismissal of his appeals was on "administrative grounds," as he claims, the fact that he did not successfully appeal the Chancery Court's order within the time allowed by the Tennessee Rules of Appellate Procedure means that the Chancery Court's order is final and binding. *See Jackson v. Smith*, 387 S.W.3d 486, 495 (Tenn. 2012) (recognizing a trial court order as a final judgment with preclusive effect when it is not appealed). This objection has no merit.

### H.    Dismissal of Trademark Claims "With Prejudice"

The plaintiff objects that the dismissal of his trademark claims with prejudice would be an abuse of discretion, because Graves continues to infringe his trademark, and, he claims, it is undisputed that he "own[s] the trademark which will soon be placed on the Principal Register and, arguably, is entitled to those benefits and protections now." (Doc. No. 137, at 14.) He also seems to believe that he still has the ability to appeal the Chancery Court's decision on jurisdictional grounds.

Regarding the latter argument, the plaintiff is misinformed. Under the Tennessee Rules of Appellate Procedure, a litigant has thirty days "after the date of entry of the judgment appealed from" to file a notice of appeal with the clerk of the appellate court. Tenn. R. App. P. 4(a). Regarding the second argument, even if the plaintiff believes that the Supreme Court's recent decision in *U.S. Patent & Trademark Office v. Booking.com B.V.* provides some basis for reopening the judgment in the Chancery Court,[9] he does not explain why a change in the law

---

[9] In *Booking.com*, the Supreme Court rejected the Trademark Office's claim that a "generic" term (like "booking") attached to ".com" always results in a generic mark not entitled to trademark protection, but it did not embrace a rule that a "generic.com" mark is *never* generic either, contrary to what the plaintiff here seems to believe. *See Booking.com*, 140 S. Ct. at 2307 ("While we reject the rule proffered by the [Trademark Office] that 'generic.com' terms are generic names, we do not embrace a rule automatically classifying such terms as nongeneric.").

pertaining to trademarks that incorporate ".com" would affect the Chancery Court's determination that Graves owns the domain name "professionalgambler.com." Moreover, a dismissal with prejudice of Miller's claims would only affect claims that are actually within the scope of the SAC, not claims that might arise in the future.

The court finds that the plaintiff's trademark claims are subject to dismissal with prejudice.

## IV. CONCLUSION

For the reasons set forth herein, the court will accept the R&R, with the modifications noted herein, reject the plaintiff's objections, grant the defendants' motions, dismiss the plaintiff's motion as moot, and dismiss this case. The copyright infringement claims will be dismissed without prejudice, but all other claims will be dismissed with prejudice. An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge

---

Regardless of what effect *Booking.com* might ultimately have on the status of Miller's trademark, the court here has not based its determination that his trademark claims are subject to dismissal on the fact—apparently now undisputed—that Miller's trademark is registered on the supplemental register rather than the principal register.